# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MATTHEW LAMAR ROSSON,** | ] |
| **Plaintiff,** | ] |
| v. | ] Case No.: 4:18-cv-01114-ACA |
| **NANCY A. BERRYHILL,** **Acting Commissioner of Social Security,** | ] |
| **Defendant.** | ] |

## MEMORANDUM OPINION

Plaintiff Matthew Lamar Rosson brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). During the pendency of this action, Mr. Rosson filed two motions to remand, one pursuant to sentence six (doc. 10), and the other pursuant to sentence four (doc. 19). Based on the court's review of the administrative record and the parties' briefs, the court **WILL DENY** the motions to remand and **WILL AFFIRM** the Commissioner's decision denying benefits.

## I.   PROCEDURAL HISTORY

On March 23, 2015, Mr. Rosson applied for SSI, alleging disability beginning on January 4, 2010. (R. at 134–39). Following the initial denial of his

claim, Mr. Rosson requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 20, 2017. (*Id.* at 78–93, 112). During the hearing, Mr. Rosson amended his alleged onset date to the filing date of March 17, 2015. (*Id.* at 10, 81). The ALJ issued an unfavorable decision on November 15, 2017, finding that Mr. Rosson was not disabled. (*Id.* at 10–19). On June 25, 2018, the Appeals Council declined Mr. Rosson's request for review (*id.* at 1–4), making the Commissioner's decision final and ripe for judicial review. *See* 42 U.S.C §§ 405(g), 1383(c). Following denial of review by the Appeals Council, Mr. Rosson filed an appeal in this court. (Doc. 1). On December 21, 2018, Mr. Rosson filed a sentence six motion to remand based on a favorable decision entered by a different ALJ for his second disability application. (Doc. 10). Thereafter, on May 17, 2019, Mr. Rosson filed a sentence four motion to remand asserting the same arguments provided in his memorandum in support of disability. (Doc. 19).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review,

[this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry*, 802 F.3d at 1267 (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Rosson has not engaged in substantial gainful activity since his alleged disability onset date of March 17, 2015. (R. at 12). The ALJ found that Mr. Rosson's morbid obesity, congestive heart failure, obesity hypoventilation syndrome, venous insufficiency, hypertension, and sleep apnea were severe impairments, but that his Diabetes Mellitus ("DM") was not severe. (*Id.* at 12–13). The ALJ also found that although Mr. Rosson claimed he suffered from chronic obstructive pulmonary disease ("COPD") and neuropathy, those were not medically determinable impairments. (*Id.* at 13). The ALJ concluded that Mr. Rosson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 13–14). After considering the evidence, the ALJ determined that Mr. Rosson had

> the residual functional capacity to perform sedentary work[1] as defined in 20 CFR 416.967(a) with no climbing of ladders, ropes, scaffolds, and no exposure to hazardous, moving machinery or unprotected heights. Climbing of ramps and stairs, stooping, kneeling, crouching, as well as bilateral overhead reaching would be limited to occasional.

(R. at 14–15).

Because Mr. Rosson did not have past relevant work experience, the ALJ found that transferability of job skills was not an issue. (*Id.* at 17). Based on the residual functional capacity ("RFC") determination and testimony from a vocational expert ("VE"), the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Rosson could perform, including employment as a general office clerk, order clerk, production worker, and table worker. (*Id.* at 18). Accordingly, the ALJ determined that Mr. Rosson was not disabled as defined by the Social Security Act during the relevant time period. (*Id.* at 18–19).

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

## IV. DISCUSSION

Mr. Rosson argues that the court should reverse and remand the Commissioner's decision for three reasons: (1) the ALJ failed to properly analyze Mr. Rosson's morbid obesity under SSR 02–1p; (2) the ALJ's RFC finding is conclusory and violated SSR 96–8a; and (3) the VE's testimony on which the ALJ relied is not supported by substantial evidence because the ALJ's hypothetical was incomplete.[2] (Doc. 9 at 1–18). Mr. Rosson also moves for a sentence six remand based on a subsequent favorable decision awarding disability benefits. (Doc. 10). The court examines each argument in turn.

### A. *The ALJ Complied with Social Security Ruling 02–1p*

Mr. Rosson argues that the ALJ failed to follow SSR 02–1p when evaluating the limitations caused by his morbid obesity. (Doc. 9 at 12). Specifically, he contends that the ALJ did not "adequately explain how [his] gross weight would affect his ability to function in a work setting." (*Id.*).

Although obesity is not a listed impairment, the ALJ is required to consider obesity when assessing a claimant's overall medical condition. SSR 02–1p

---

[2] As noted above, Mr. Rosson filed a motion to remand pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. 19). However, the motion recites arguments—nearly verbatim—made previously in his memorandum in support of disability. Therefore, for the same reasons discussed below, the motion to remand pursuant to sentence four is due to be **DENIED**.

provides that obesity shall be considered when "determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment prevents a claimant 'from doing past relevant work and other work that exists in significant numbers in the national economy.'" *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (quoting SSR 02–1p). SSR 02–1p further provides that "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing" and requires the ALJ to assess how the claimant's ability to perform routine movement and necessary physical activity is effected by his obesity. SSR 02–1p.

A review of the record establishes that the ALJ properly considered Mr. Rosson's morbid obesity as required by SSR 02–1p. At Step Two of the evaluation process, the ALJ found that Mr. Rosson had a combination of severe impairments including morbid obesity, congestive heart failure, obesity hypoventilation syndrome, venous insufficiency, hypertension, and sleep apnea. (R. at 12). The ALJ extensively reviewed Mr. Rosson's medical records and determined that each of these diagnoses significantly limited his ability to perform basic work activities. (*Id.* at 12–13). At Step Three, the ALJ found that Mr. Rosson's combination of impairments did not "meet[] or medically equal[] the

severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 13). In reaching this conclusion, the ALJ referenced SSR 02–1p and considered Mr. Rosson's morbid obesity in concert with his other impairments. (*Id.* at 14). Similarly, at Step Four, the ALJ "evaluated [Mr. Rosson's] obesity . . . in accordance with SSR 02–1p." (R. at 17). And, the ALJ accounted for limitations caused by Mr. Rosson's impairments in finding he had the RFC to perform a limited range of sedentary work. (*Id.* at 14–18). This analysis satisfies the requirements of SSR 02–1p. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009).

Mr. Rosson also contends that his obesity resulted in functional limitations related to his "ability to walk" and "climb stairs," and argues that his body mass index ("BMI") was in the morbidly obese range. (Doc. 9 at 12–13). However, Mr. Rosson fails to cite any medical evidence showing that his morbid obesity contributed to these additional limitations. While it is the ALJ's responsibility to consider obesity as a medically determinable impairment, a claimant maintains the burden of establishing that his obesity results in functional limitations. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). In other words, the mere diagnosis of a severe condition, alone, is insufficient to establish a related limitation. *See Davis–Grimplin v. Comm'r of Soc. Sec. Admin.*, 556 F. App'x 858,

863 (11th Cir. 2014). Rather, a claimant must show a connection between a severe impairment and their ability to work. *Wind*, 133 F. App'x at 690. Because Mr. Rosson fails to provide medical evidence establishing that his morbid obesity contributed to any functional limitations, he has not carried his burden of proof with respect to this issue.

Lastly, to the extent Mr. Rosson argues that the ALJ failed to consider the effects of his morbid obesity in combination with his other impairments (doc. 9 at 13), this claim is without merit. "Where a claimant has alleged several impairments, the [ALJ] has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Dep't. of Health and Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991). The Eleventh Circuit has recognized that an ALJ satisfies his duty to consider all of a claimant's impairments in combination "by stating that he considered whether the claimant suffered from any impairment or combination of impairments." *Sneed v. Barnhart*, 214 F. App'x 883, 887 (11th Cir. 2006) (citing *Jones*, 941 F.2d at 1533); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002) (finding an ALJ's statement "that [the claimant] did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix

1, Subpart P . . . constitutes evidence that he considered the combined effects of [the claimant's] impairments.").

In the present case, the ALJ determined that Mr. Rosson's combination of impairments did not "meet[] or medically equal[] the severity of the listed impairments in 20 CFR Part 404. Subpart P, Appendix 1." (R. at 13). And, the ALJ expressly stated that he determined Mr. Rosson's RFC "[a]fter careful consideration of the entire record," including "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.* at 15). The ALJ then reviewed Mr. Rosson's impairments but determined that Mr. Rosson's impairments, alone or in combination, did not preclude him from preforming a limited range of sedentary work. (*Id.* at 16–17). Accordingly, the ALJ properly assessed Mr. Rosson's impairments in combination with his morbid obesity and abided by the requirements set forth under SSR 02–1p.

  B. *The ALJ's RFC Determination Complies with SSR 96–8*

The RFC describes the type of work that a claimant may perform despite limitations caused by his impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)). The ALJ determined that Mr. Rosson can perform a range of sedentary work with a number of postural and

exertional limitations. (R. at 14–17). Mr. Rosson argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC is conclusory and does not comply with SSR 96–8p. (Doc. 9 at 13). The court disagrees.

> SSR 96–8p states that:
>
> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96–8p.

> In making his decision, the ALJ:
>
> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16–3p.

(R. at 15). In addition to medical and objective evidence, the ALJ considered formal medical opinions, Mr. Rosson's treatment history, and his testimony about his alleged limitations. (*Id.* at 14–17). The ALJ's decision sufficiently indicates that he considered all of the relevant evidence in arriving at his RFC determination. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Following [SSR 96–8p's] rubric, the ALJ fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities."); *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) ("[T]he ALJ complied with SSR 96–8p by considering [the claimant's] functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.").

Mr. Rosson suggests that the ALJ's RFC is not supported by substantial evidence because the ALJ was required to rely on a physical capacities assessment from a treating or examining physician. (*See* Doc. 9 at 14) (citing *Thomason v. Barnhart*, 34 F. Supp. 2d 1326 (N.D. Ala. 2004)). Mr. Rosson's argument is not

persuasive. The RFC determination is an issue reserved to the Commissioner, and although an ALJ will consider medical source opinions in reaching that determination, an ALJ is not required to base his RFC finding on the opinion of a physician. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2); *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (substantial evidence supported ALJ's RFC determination even though ALJ rejected treating physician's opinion, and the record contained no other physical capacities assessment).

Mr. Rosson also submits that this case is similar to *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987)[3], a case in which the Eleventh Circuit found that substantial evidence did not support the Commissioner's finding that the claimant could perform light work. (Doc. 9 at 14–16). Mr. Rosson block quotes from the *Walker* decision, but he offers no substantive argument regarding why the facts of this case are analogous. (*Id.*). In *Walker*, the ALJ made no specific reference to the medical reports or the opinion of the claimant's treating physician and failed to consider all of the claimant's impairments before determining her RFC. *Walker*, 826 F.2d at 1001. Here, the ALJ referenced both Mr. Rosson's "recent treatment records" and the medical opinion of the doctor who performed Mr. Rosson's consultative examination. (Doc. 7-3 at 17). The ALJ also explicitly stated the

---

[3] The court notes that Mr. Rosson's citation to "*Walker v. Bowen*, 826 F.2d 941 (1987)" is incorrect. (Doc. 9 at 14–15).

13

weight he gave to the opinion evidence and the reasons for giving such weight. (*Id.* at 18). Therefore, Mr. Rosson's reliance on *Walker* is misplaced. And, contrary to Mr. Rosson's argument, the ALJ's RFC findings are not mere conclusions without analysis. (*See* R. at 14–17).

    C.    <u>*Vocational Expert Hypothetical*</u>

Mr. Rosson next argues that the ALJ improperly relied on testimony that the VE gave in response to a hypothetical question that did not include all of the limitations associated with his morbid obesity, congestive heart failure, and use of an oxygen machine. (Doc. 9 at 16). And, that the ALJ improperly "assumed [his] ability to perform sedentary work." (*Id.*). The court is not convinced.

"When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). However, an ALJ is not required to include findings in a hypothetical question that the ALJ

properly rejects as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

When questioning the VE during the administrative hearing, the ALJ posed a hypothetical question encompassing the limitations identified in his RFC assessment. Specifically, the ALJ asked the VE the following hypothetical question:

> [assume] [a] person of Mr. Rosson's age and education, who is limited to sedentary work. There's no climbing of ladders, ropes or scaffolds, and no exposure to hazardous moving machinery or unprotected heights. Climbing of ramps and stairs. Stooping kneeling, crouching, and crawling, as well as bilateral overhead reaching, would be limited to occasional. Does that allow for other work?

(R. at 90). In response, the VE answered, "Yes." (*Id.* at 91).

This hypothetical question posed to the VE fully encompassed all of Mr. Rosson's medically supported impairments. In the ALJ's RFC assessment, Mr. Rosson was limited to jobs that did not require climbing of ladders, ropes or scaffolds. (*See* R. at 17, 90–91). The ALJ further included physical limitations that would prevent Mr. Rosson from having to exert himself or cause breathing attacks, such as only requiring occasional climbing of ramps and stairs, stooping kneeling, crouching, and crawling, as well as bilateral overhead reaching. (*Id.* at 14–17). The ALJ ultimately concluded that Mr. Rosson was able to perform limited

sedentary work. (*Id.*). Each of these determinations are supported by substantial evidence.

The ALJ's RFC assessment was based primarily on a consultative report prepared by Dr. Celtin Roberston on July 17, 2015. (R. at 289). Dr. Roberston opined that Mr. Rosson can lift five to ten pounds occasionally and stand for about two hours. (*Id.* at 293). He also opined that Mr. Rosson can sit throughout an eight hour workday without limitation. (*Id.* at 293). Dr. Roberston observed Mr. Rosson enter the examination room with two liters of oxygen, and noted that he weighed 350 pounds and suffered from congestive heart failure. (*Id.*). Upon review of Mr. Rosson's physical impairments, Dr. Roberston recommended the same postural and exertional limitations included in the hypothetical question. (R. at 293–94). Thus, the ALJ properly determined that Mr. Rosson was able to perform a limited range of sedentary work and framed the hypothetical in a manner consistent with his RFC finding. (*Id.* at 17). Moreover, the record is devoid of any medical evidence tending to support Mr. Rosson's claim that he suffers from additional functional limitations due to his morbid obesity, congestive heart failure, or use of an oxygen machine. Nor does Mr. Rosson advance a specific argument regarding how these impairments affect his ability to work.

Accordingly, because the limitations included in the ALJ's RFC assessment were based on substantial evidence, the court finds that the hypothetical question posed to the VE was sufficiently comprehensive.

D. *Sentence Six Motion to Remand*

Sentence six "provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court." *Ingram v. Comm'r Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). To be entitled to remand to the Social Security Administration ("SSA"), a claimant must show that "(1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Gordon v. Soc. Sec. Admin., Comm'r*, 625 F. App'x 512, 514 (11th Cir. 2015) (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). Therefore, sentence six remand is appropriate only in cases where "the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Ingram*, 496 F.3d at 1267 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

Mr. Rosson argues this action should be remanded under sentence six for consideration of new evidence—namely a notice of award resulting from a fully favorable decision by another ALJ on a subsequent disability claim. (Doc. 10 at 1). In *Hunter v. Social Security Administration, Commissioner*, 808 F.3d 818 (11th Cir. 2015), the Eleventh Circuit held that a subsequent favorable decision, on its own, "is not evidence for § 405(g) purposes." *Id.* at 822. In reaching this conclusion, the Court reasoned:

> In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the fact findings upon which it was premised.

*Id.* (internal citations omitted).

Here, the only new evidence Mr. Rosson provides in support of his motion is a notice of award letter dated November 1, 2018. (Doc. 10-1 at 1). The notice of award was based on Mr. Rosson's second application for SSI due to an alleged disability that began on July 25, 2018. (*Id.*). Mr. Rosson does not contend the subsequent decision is supported by new, material evidence that for good cause

was not raised in the prior proceeding. Rather, he simply relies on the notice itself. Because a notice of award is not considered new and material evidence, "as opposed to the evidence supporting the subsequent decision," Mr. Rosson's motion to remand pursuant to sentence six is due to be denied. *Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 783 (11th Cir. 2018) (finding claimant's notice from SSA awarding disability benefits based on his third application could not be used as evidence to undermine another ALJ's denial of claimant's first application).

## V. CONCLUSION

For the reasons explained above, the court concludes that, Mr. Rosson's motions to remand (doc. 10; doc 19), are due to be **DENIED**, and the decision of the Commissioner is due to be **AFFIRMED**. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 10, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE